SEWELL *v.* FEDERAL COMPRESS & WAREHOUSE COMPANY.

4-4646

Opinion delivered June 14, 1937.

*Oliver Moore,* for appellants.
*Caudle & White,* for appellee.

BUTLER, J., (on rehearing). We have re-examined the record and have concluded that we were in error in affirming the judgment of the lower court in its entirety, that the petition for rehearing should be granted, that our original opinion be withdrawn and the following substituted therefor.

John K. and Anna Sewell are the owners of a farm in Pope county, Arkansas. For the years 1931 and 1932, Glee Young was their tenant. He was to pay as rent on lands put to cotton one-fourth of the amount produced. In 1931, the landlords waived their lien for rent in favor of the United States government in order that Young might finance his operations. In that year he made approximately thirty-nine bales of cotton, but most of it was used in paying the expense of the making of the crop. At the end of that year, the landlords had received no rent, and in the spring of 1932 they brought suit to recover the amount due. That suit was not pressed and was pending in the fall of 1932. In that year, the tenant produced fifteen bales of cotton, twelve bales of which he deposited with the Federal Compress & Warehouse Company and was given receipts for each by which the bales were identified. Young and the Sewells agreed upon a settlement of the rents for 1931 and 1932 and, in pursuance to the agreement, Young delivered nine of these receipts to Honorable Bob Bailey, the Sewells' agent, who, in turn delivered them at a later date to the Sewells.

Young was indebted to the Peoples Exchange Bank for advances made to him in 1931 and, to secure this debt and other debts which might be incurred, he executed a mortgage on his interest in the cotton and other crops grown on a certain part of the Sewell farm. On this part of the farm four bales of cotton were produced in the year 1932. In February, 1933, the bank brought suit in replevin against Young and obtained an order of delivery for the twelve bales of cotton stored in the warehouse. Under this order, the sheriff took possession of the cotton. Later there was a judgment in that suit against Young, and the sheriff was ordered to sell the cotton to satisfy the same. This sale was made through the bank

on or about January 15, 1934, at an average price of approximately eleven and a half cents per pound.

At some time, on a date not disclosed by the testimony, Sewell presented the receipts to the warehouse company and demanded the cotton. This was at a time when the warehouse company had surrendered possession of the cotton, and, it being unable to comply with Sewell's demand, suit was instituted by him to recover the value of the nine bales of cotton.

The warehouse company answered, admitting the storing of the cotton and the issuance of the receipts to Young, but denying that the same had been transferred to the plaintiff. It alleged that in the replevin suit brought by the bank against Young, the Sewells intervened and claimed the cotton, and that upon a final hearing the right of possession to the cotton was found to be in the bank. The bank intervened, filing practically the same answer as the warehouse company, and it and the latter company pleaded the judgment in replevin as a bar to Sewell's action.

The only testimony offered in support of the plea *res judicata* was an unidentified paper, alleged to have been filed by the Sewells in the suit for replevin, in which the claim was made that the Sewells were entitled to the rents on the cotton produced in 1932. The judgment in replevin made no mention of the Sewells, nor was there any other testimony except the unidentified instrument mentioned, to sustain the plea of *res judicata*.

The facts hereinbefore related were established by a clear preponderance of the testimony, and the trial court found in favor of the Sewells for the value of five bales of cotton in the sum of $300.30.

Both the Sewells and the Federal Compress & Warehouse Company appealed, having first filed their motions for a new trial, which were overruled. The intervener bank is designated in the record before us as "cross-appellant."

It is first insisted by the Federal Compress & Warehouse Company and the alleged cross-appellant, Peoples Exchange Bank of Russellville, that the appeal of John K. and Anna Sewell should be dismissed because the judg-

ment appealed from was not a final judgment. It was a final judgment as to the warehouse company. In its judgment the trial court ignored the intervention of the Peoples Exchange Bank and made no mention of the same, but the bank did not complain of this action and did not file a motion for a new trial. Therefore, it has no place in this lawsuit on appeal, and, since the bank is not before this court, the contentions made in its behalf must be ignored. Likewise, the trial court was correct in refusing to transfer to equity.

The appellants contend, first, that the trial court erred in finding the net value of the cotton per pound at eleven cents. This contention is based on the testimony of a cotton buyer to the effect that in September, 1934, for certain cotton, he secured the sum of 13 cents a pound. The appellants contend that they are entitled to the highest market price during the time the cotton was in the possession of the warehouse company. We do not think this contention is correct, but that the value of the cotton, at the time demand was made for it and refused, would be the price to which appellants were entitled. There is no testimony showing the grade of the cotton in question or as to the time the demand was made.

The appellants further contend that the trial court erred in adjudging them to be entitled to only five bales of the nine bales for which they held warehouse receipts. We have concluded that this contention is correct. As noted, there were twelve bales of cotton deposited by Young in the warehouse for which receipts were issued to him. The trial court found that four of these bales were covered by the mortgage of the bank. This finding seems to be supported by the evidence. The court further found that of these four bales the Sewells were entitled to recover one-fourth as rent, or one bale of cotton. This left eight bales which were not covered by the bank's mortgage. Therefore, the Sewells were entitled to recover the value of the nine bales for which they held warehouse receipts.

Section 10427 of Crawford & Moses' Digest provides that a receipt issued by a warehouseman in which it is stated that the goods received will be delivered to the

bearer on demand is a negotiable receipt. This provision appeared in all of the receipts delivered by Young to the Sewells which were in the form provided by § 10428 of Crawford & Moses' Digest and carried the title to the cotton represented subject, of course, to any outstanding superior title.

The Sewells further complain of the failure of the trial court to award to them punitive damages against the warehouse company. We see no merit in this contention. The surrender of the cotton by the warehouseman was not willful, but made in obedience to the order of a court of competent jurisdiction. While that order does not protect the warehouse company from liability to the true owner of the cotton, it does protect it from the award of punitive damages.

The trial court found, and the evidence establishes the fact, that the nine bales of cotton averaged 455 pounds each. Accordingly, a judgment should have been rendered in favor of the appellants for the sum of $450.45, the total value of the nine bales at eleven cents a pound, instead of judgment for the value of five bales.

The judgment will, therefore, be modified in this respect, and, as modified, affirmed. The clerk will enter judgment here in accordance with this opinion.